David Lawton (CA Bar No. 275435)
THE GALLAGHER LAW GROUP PC
1875 Century Park East, Suite 1550
Los Angeles, CA 90067
Telephone: (310) 203-2600
Facsimile: (310) 203-2610
E-mail: dlawton@thegallaghergroup.com

Attorney for Plaintiff Frank S. Cammarata
d/b/a Cammarata Associates,
as successor to MHP II Corporation

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK S. CAMMARATA, d/b/a CAMMARATA ASSOCIATES, as successor to MHP II Corporation.<br><br>Plaintiff,<br><br>v.<br><br>KELLY CAPITAL, LLC, KELLY ESCROW FUND V, LLC and MICHAEL R. KELLY, | Case No. 17-cv-00346-BEN-AGS<br><br>PLAINTIFF/APPELLANT'S **NOTICE OF APPEAL** TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

NOTICE is hereby given that Plaintiff Frank S. Cammarata, doing business as Cammarata Associates, as successor to MHP II Corporation (hereinafter collectively referred to as "Plaintiff/Appellant"), hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Order Granting Defendants' Motion For Summary Judgment entered on September 10, 2018, made part of that Judgment In A Civil Case entered on September 10, 2018 in this action in favor of the Defendants Kelly Capital, LLC, Kelly Escrow Fund V, LLC And Michael R. Kelly, and all interlocutory orders that give rise to that judgment.

DATED: October 9, 2018

Respectfully submitted,

THE GALLAGHER LAW GROUP PC

By: *_/s/ David H. Lawton_* .

David H. Lawton
Attorneys for Plaintiff Frank S. Cammarata d/b/a Cammarata Associates, as successor to MHP II Corporation

# United States District Court

**SOUTHERN DISTRICT OF CALIFORNIA**

Frank S. Cammarata as successor to MHP II Corporation doing business as Cammarata Associates

**Plaintiff,**

**V.**

Kelly Capital, LLC; Kelly Escrow Fund V, LLC; Michael R. Kelly

**Defendant.**

**Civil Action No.** 17-cv-00346-BEN-AGS

## JUDGMENT IN A CIVIL CASE

**Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED:

To sum up, Plaintiff was granted five and a half months to conduct discovery prior to responding to Defendants' motion, and/or seek leave to amend his Complaint to establish a valid excuse as to why his claims are not barred by their respective statute of limitations. Plaintiff has failed to demonstrate why the discovery rule should apply to toll the statute of limitations on any of his claims. As a result, the Court concludes Plaintiff has not met his burden to demonstrate a triable issue of material fact exists for any of his claims. Therefore, Defendants' motion for summary judgment on each of Plaintiff's claims is GRANTED. IT IS SO ORDERED.

**Date:** 9/10/18

**CLERK OF COURT**
**JOHN MORRILL, Clerk of Court**
By: s/ A. Hazard
A. Hazard, Deputy

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK S. CAMMARATA, d/b/a CAMMARATA ASSOCIATES, *as successor to MHP II Corporation*<br>Plaintiff,<br>v.<br>KELLY CAPITAL, LLC, et al.,<br>Defendants. | Case No.: 3:17-cv-00346-BEN-AGS<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On February 21, 2017, Plaintiff Frank S. Cammarata, d/b/a/ Cammarata Associates, as successor to MHP II Corporation ("Plaintiff" or "Cammarata"), filed this diversity action for declaratory relief and monetary damages against Defendants Kelly Capital, LLC, Kelly Escrow Fund V, LLC, and Michael R. Kelly. (Docket No. 1.) On December 18, 2017, Defendants filed the instant motion for summary judgment. (Docket No. 28.) On January 19, 2018, this Court granted Plaintiff's Rule 56(d) motion to continue briefing on this motion until after a reasonable period for discovery. (Docket No. 43.) On July 9, 2018, this motion became fully briefed and ripe for consideration.[1]

[1] The Court notes that the parties filed a number of objections to the evidence presented in Defendants' summary judgment motion and Plaintiff's opposition. In

As will be explained in further detail below, because each of Plaintiff's claims for relief are untimely, Defendants' motion is **GRANTED**.

## BACKGROUND[2]

### A. Tobacco Escrow Accounts and Escrow Releases

A brief overview of the circumstances giving rise to the contracts at issue will help in understanding the underlying dispute. The facts recited are taken directly from Plaintiff's Complaint or the findings of fact made by the United States District Court for the Eastern District of Virginia in *Kelly Capital, LLC v. S & M Brands, Inc.*, 873 F. Supp. 2d 659 (E.D. Va. 2012), on which Plaintiff's Complaint partially relies and to which Defendants do not dispute. (*See* Mot. at pp. 2-8.)

In the 1990's, several states initiated class actions against tobacco manufacturers seeking compensation for expenses incurred, or to be incurred, in treating diseases associated with smoking tobacco. Those actions were settled pursuant to a 1998 Master Settlement Agreement ("MSA"). However, not all tobacco companies were parties to the class actions or the MSA. To bring the non-signing manufacturers into the fold and achieve the same result as the MSA, states passed legislation.

As a result of the MSA or the state legislation, tobacco manufacturers in Virginia and 45 other states are required either to have signed the MSA, or to contribute annually to an escrow account certain sums for each carton of cigarettes sold. The deposited funds must remain in escrow for 25 years. While in escrow, those funds may only be used to

---

addition, Plaintiff filed an ex parte motion to file a sur-reply or strike "new evidence" raised in Defendants' reply. The objections and Plaintiff's ex parte motion are fully briefed. Because none of the contested evidence affects the Court's conclusion, Plaintiff's ex parte motion is **GRANTED** as to its request to strike the evidence presented in Defendants' reply, and **DENIED** as to its request to file a sur-reply, and the Court declines to rule on the remaining evidentiary objections.

[2] The Court's reference to certain pieces of evidence is not an indication that it is the only pertinent evidence relied on or considered by the Court. The Court has reviewed and considered all the admissible evidence submitted by the parties.

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1744 Page 3 of 21

pay judgments on, or settlements of, tobacco-related claims. At the end of 25 years, the depositing company is entitled to the deposited funds then remaining in the escrow account, *i.e.*, the portion of the principal that has not been used to pay judgments on, or settlements of, tobacco-related claims. The deposited funds may be invested, under tightly regulated circumstances, in very restricted investment vehicles that produce interest income. In essence, the deposited funds earn interest and the depositing company is entitled to that interest as it is earned.

S&M Brands, Inc. ("S&M") is a tobacco manufacturer and distributor of cigarettes and other tobacco products. S&M is not a party to this case. S&M did not sign the MSA, and thus, as required by state laws, it has established escrow accounts in each state in which it sells cigarettes. The escrow accounts are governed by an Escrow Agreement between S&M and a national banking association. S&M has a separate escrow account for each year in which it has sold cigarettes and thereafter funded the escrow accounts.

The tobacco companies that establish and fund these escrow accounts cannot sell, transfer, distribute, or use the principal funds deposited in the accounts until expiration of the 25-year period. However, they can sell or distribute what are called "escrow releases." An escrow release, *inter alia,* vests in the purchasing entity: (1) the right to the interest income earned from the funds that have been deposited into the escrow accounts; and/or (2) the right to receive any funds, principal or interest, that remain in the escrow account at the end of the 25-year period.

Tobacco companies that were signatories to the MSA were able to take tax deductions for their contributions to the escrow accounts because those accounts were designated as Qualified Settlement Funds ("QSF"). Conversely, tobacco companies that were not signatories to the MSA, and who created their own escrow accounts, were not entitled to the benefit of the QSF deduction.

**B. The Relationship Between Plaintiff and Defendants**

In 2009, S&M engaged Cammarata to help locate purchasers for their escrow releases. Cammarata contacted Defendant Kelly Capital, LLC ("Kelly Capital"), a

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1743 Page 4 of 21

private equity venture that acquired and managed asset-based businesses, real estate debt, and other investments. Subsequently, Cammarata formed MHP II Corporation ("MHP") to assist Kelly Capital with its efforts to purchase tobacco escrow releases.

**C. The Commission Agreement and Kelly Capital's April 16, 2010 Purchase of S&M's Escrow Releases**

On April 12, 2010, MHP and Kelly Capital entered into a written agreement entitled, "Commission Agreement." Under the terms of the Commission Agreement, MHP agreed to introduce Kelly Capital to S&M, and Kelly Capital agreed to pay MHP a 5% commission based on the gross purchase price Kelly Capital or its assignee paid to S&M for its tobacco escrow releases. Additionally, "[Kelly Capital] and MHP agree that MHP shall be entitled to receive a commission fee paid upon close of any escrow relating solely to the [S&M] Escrow Funds" by Kelly Capital or its assignee "in the amount of [5%] of the gross purchase price . . . (the 'Commission')." (Docket No. 1-2, Compl., Ex. A., "Commission Agreement" ¶ 2.)

On April 16, 2010, Kelly Capital assigned its rights to purchase S&M's escrow releases to SEI, who purchased $30 million of S&M's escrow releases for a purchase price of $10 million (the "first tranche of escrow releases"). It is undisputed that Kelly Capital was obligated to pay (and in fact paid) MHP a commission of $500,000 (*i.e.*, 5% of $10 million) for this purchase, and that payment of this commission is not at issue.

**D. Kelly Capital's July 15, 2010 Purchase of S&M's Escrow Releases and the First Amendment to the Commission Agreement**

On July 15, 2010, although there appears to be disagreement regarding the order in which they occurred, it is undisputed that three things happened: 1) Kelly Capital assigned its remaining rights to purchase S&M's escrow releases to Kelly Escrow Fund V, LLC ("Kelly Escrow"); 2) Kelly Escrow purchased an additional $40 million of S&M's escrow releases for a purchase price of $13.6 million (the "second tranche of escrow releases"); and 3) Kelly Capital and MHP entered into the First Amendment to the Commission Agreement ("First Amendment").

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1746 Page 5 of 21

In relevant part, the First Amendment modifies the timing of Kelly Capital's payment of "the Commission due to MHP," and the term "Commission" is defined in the Commission Agreement. (Docket No. 1-3, Compl., Ex. B., "First Amendment" ¶ 1.) Specifically, the First Amendment states, "[Kelly Capital] and MHP agree that [Kelly Capital] will pay the Commission due to MHP for the sale of any [Kelly Capital] Escrow Funds pursuant to the terms and conditions of the Escrow Agreement upon the sale, conveyance and/or transfer of the escrow releases for [Kelly Capital] Escrow Funds to a third party end user and/or financial institution ('3rd Party Buyer')." (*Id.*) It is undisputed that Kelly Capital never paid a commission to MHP for Kelly Escrow's purchase of the second tranche of escrow releases. It is this commission, in the amount of $680,000 (*i.e.*, 5% of $13.6 million), that Plaintiff seeks to recover.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a summary judgment motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255.

The moving party bears the initial burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.* The burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Id.* As a general rule, the "mere existence of a scintilla of evidence" will be insufficient to raise

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1747 Page 6 of 21

a genuine issue of material fact. *Anderson*, 477 U.S. at 252. There must be evidence on which the jury could reasonably find for the non-moving party. *Id.*

**DISCUSSION**

**A. Conflict of Laws Analysis**

A federal district court sitting in diversity applies the conflict of law rules of the forum state to determine whether the law of the forum state, or some other law, should govern the case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-97 (1941). In California, courts apply a three-part governmental interest test. *In re Nucorp Energy Sec. Litig.,* 661 F. Supp. 1403, 1412 (S.D. Cal. 1987) (citing *Hurtado v. Super. Ct.,* 11 Cal. 3d 574, 579-80); *see also Abogados v. AT&T, Inc.,* 223 F.3d 932, 934 (9th Cir. 2000). "This choice of law analysis carries a presumption that California law applies and that the proponent of the foreign state law bears the burden of showing a compelling reason justifying displacement of California law." *Rasidescu v. Midland Credit Mgmt., Inc.*, 496 F. Supp. 2d 1155, 1159 (S.D. Cal. 2007) (citing *Marsh v. Burrell,* 805 F. Supp. 1493, 1496 (N.D. Cal. 1992)).

"First, the court must determine whether there is in fact a conflict between the competing jurisdictions since 'there is obviously no problem where the laws of the two states are identical.'" *In re Nucorp,* 661 F. Supp. at 1412 (quoting *Hurtado,* 11 Cal. 3d at 580). If a conflict exists, the court must then "determine whether each jurisdiction has a legitimate interest in the application of its law[s] and underlying policy." *Id.* at 1412. "If both jurisdictions have a legitimate interest in the application of their conflicting laws, the court should apply the law[s] of the state whose interest would be the more impaired if its law[s] were not applied." *Id.* at 1412. "When neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law." *Rasidescu*, 496 F. Supp. 2d at 1159 (S.D. Cal. 2007) (quoting *Homedics, Inc. v. Valley Forge Ins. Co.,* 315 F.3d 1135, 1138 (9th Cir. 2003)) (internal quotation marks omitted).

///

Here, neither party disputes that California law applies to Plaintiff's claims, none of which arise under federal law. Accordingly, the Court shall apply California law. *Homedics*, 315 F.3d at 1138.

**B. Motion for Summary Judgment**

Plaintiff's Complaint asserts eight claims for relief under various state-law theories of fraud, breach of contract, rescission, and quantum meruit, and two requests for related declaratory relief. Defendants' motion for summary judgment argues that each of Plaintiff's claims are barred by their respective statute of limitations. Defendants also argue that Kelly Escrow and Michael R. Kelly ("Michael Kelly") are entitled to summary judgment because each of Plaintiff's claims arise out of the Commission Agreement and the First Amendment, which neither are parties to.

In California, "[c]ivil actions are governed by statutes of limitations that dictate the time period within which a [claim for relief] may be commenced." *Thomson v. Canyon*, 198 Cal. App. 4th 594, 604 (2011) (citing Cal. Code Civ. Proc. § 312). "Various statutes of limitations apply to different [claims for relief]." *Id.* (citing Cal. Code Civ. Proc. §§ 315, *et seq*). "For all statutes of limitations, the statute begins to run when the '[claim for relief] accrues.'" *Id.* (quoting *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005)). A claim for relief generally accrues at "the time when the cause of action is complete with all of its elements." *Id.* (internal quotation marks omitted). "Generally, statute of limitations issues raise questions of fact that must be tried, however, when the uncontradicted facts are susceptible of only one legitimate inference, summary judgment is proper." *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988)).

The Court agrees with Defendants that Plaintiff's claims are time-barred. As a result, it does not reach Defendants' argument that Kelly Escrow and Michael Kelly are separately entitled to summary judgment. For the same reason, unless more precision is required, the Court's discussion mirrors Plaintiff's Complaint in referring to Defendants collectively. The Court analyzes Plaintiff's claims in an order it finds most logical.

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1749 Page 8 of 21

1. First Claim for Relief

Plaintiff's First Claim for Relief is for fraudulent concealment. The statute of limitations for a fraudulent concealment claim is three years. *Kline*, 87 Cal. App. 4th at 1373-74 ("An action for relief on the grounds of fraud or mistake must be commenced within three years.") (citing Cal. Civ. Code Proc. § 338(d)). "However, such action is not deemed accrued 'until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'" *Id.* "Because the discovery rule operates as an exception to the statute of limitations, 'if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint.'" *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014) (quoting *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412, 437 (1945)).

According to Plaintiff's Complaint, Defendants allegedly concealed the following facts:

- S&M advised Defendants that it had obtained a private letter ruling from the Internal Revenue Service ("IRS") that their escrow accounts had been designated as QSF and were therefore subject to a double layer of taxation;

- Michael Kelly had settled on his own theory that "he could avoid double taxation because S&M would pay taxes on its income from the sale of its escrow releases";
- Defendants' lawyers had advised Michael Kelly that "his theory to avoid double taxation likely would not work";

- Defendants "knowingly accept[ed] the risk that [Michael Kelly's] theory might not be a viable one," which would result in Defendants' responsibility to pay the QSF-level taxes;

- "Defendants knew that it [sic] would have to disclose the QSF-level tax burden, which would negatively affect Defendants' ability to obtain potential investors, or to flip or resell the Escrow Accounts, because the purchasers/investors would be responsible for the QSF-level tax [sic]";

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1750 Page 9 of 21

- Kelly Capital knew that it could not tell investors that the S&M was obligated to pay the QSF-level taxes;

- "Defendants knew that its [sic] ability to sell, convey and/or transfer the escrow releases was greatly impaired, or not viable because of the QSF-Level Tax Burden."

(Compl. ¶¶ 59-65.) Plaintiff further alleges that, had he been aware of these facts, "Plaintiff would not have entered into the [First Amendment]." (*Id.* ¶ 69.) The parties entered into the First Amendment on July 15, 2010. Thus, unless the discovery rule applies the statute of limitations on this claim began to run on July 15, 2010 and ran out in 2013.

Although Defendants advance several arguments as to why they are entitled to summary judgment on this claim, the Court is most persuaded by their argument regarding Plaintiff's "burden of *pleading and proving* that he did not make the discovery until within three years prior to the filing of his complaint." (Mot. a p. 17) (quoting *Hobart*, 26 Cal. 2d at 437) (emphasis in original omitted; emphasis added.) As noted above, Plaintiff's Complaint was filed on February 21, 2017. (Docket No. 1.)

"To excuse failure to discover the fraud within three years after its commission, a plaintiff also must plead 'facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.'" *Cansino*, 224 Cal. App. 4th at 1472 (quoting *Hobart*, 26 Cal. 2d at 437) (quotation marks and additional citation omitted). "To that end, *a plaintiff must allege facts showing 'the time and surrounding circumstances of the discovery and what the discovery was.'*" *Id.* (quoting *Hobart*, 26 Cal. 2d at 441) (emphasis added).

Here, Plaintiff's Complaint fails to make the required showing because it does not allege any facts to establish *when* or *how* Plaintiff discovered the concealment of the aforementioned facts. But the Complaint does allege that Defendants asked Plaintiff to agree to wait for payment of his commission for Kelly Escrow's purchase of the second tranche of escrow releases until they "could free up the escrow releases for disposition –

a process that Defendants orally represented to Plaintiffs [sic] would take 60-90 days." (Compl. ¶¶ 29-31.)[3] "In reliance on that representation from Defendants, Plaintiffs agreed to grant the Defendants' request," and entered into the First Amendment on July 15, 2010. (*Id.* ¶ 32.) These allegations suggest Plaintiff should have been on notice of his fraudulent concealment claim as early as October 14, 2010 (*i.e.*, 91 days after July 15, 2010). And Plaintiff does not otherwise establish a valid excuse for his delay in commencing this action. Plaintiff's opposition adds little.

Plaintiff's opposition explains, in a conclusory fashion:

> It was not until **after** the Virginia case was determined in 2013 by the Fourth Circuit when [sic] Plaintiffs discovered the information that Defendants withheld from Plaintiffs for years. Once Plaintiffs realized the harm, they sent a demand letter to Defendants on December 8th, 2014 (the "demand letter") requesting to receive their commission. . . . Plaintiff did not discover the facts concealed by Defendants until some-time [sic] after the last demand letter was sent on February 10, 2015. That was when Plaintiffs had knowledge of the harm and its cause. . . . Plaintiffs had no notice about their basis of fraud claims until after the Virginia case was decided.

(Opp'n at pp. 24-25) (emphasis added in original).

This does not present a valid excuse for several reasons. First, as discussed above, these assertions were not pleaded in Plaintiff's Complaint, as required by California law.[4] *See Cansino*, 224 Cal. App. 4th at 1472.

///

---

[3] Throughout the Complaint, Plaintiff refers to himself as "Plaintiffs." For ease of reading, when quoting directly from the Complaint, the Court refrains from altering the allegations, but otherwise refers to Plaintiff as an individual.

[4] Notably, Defendants' motion for summary judgment, filed on December 18, 2017, includes citation to California law regarding the requirement to plead facts to establish a valid excuse and support application of the discovery rule. Despite notice of this pleading requirement, and having nearly five and a half months to conduct discovery and respond to Defendants' motion, Plaintiff never sought leave to amend his Complaint.

Second, even if these assertions were alleged in the Complaint, they are only Plaintiff's own unfounded conclusions that he "did not discover the facts concealed by Defendants until some-time [sic] after the last demand letter was sent on February 10, 2015." (*Id.*) In other words, Plaintiff's excuse would still be lacking for failing to specify the circumstances of his discovery.

Third, even if these assertions were specific enough to establish an excuse, Plaintiff does not offer any legal authority or otherwise support his conclusory assertions that California's discovery rule tolls the statute of limitations for his fraudulent concealment claim to the date of Plaintiff's last demand letter, sent nearly four and a half years after Plaintiff should have suspected Defendants' alleged wrongdoing. The statute begins to run "not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing." *Kline*, 87 Cal. App. 4th 1369 at 1374. Here, as explained above, the Complaint establishes Plaintiff should have suspected Defendants' wrongdoing by October 14, 2010.

Fourth, and crucially, Plaintiff's opposition does not explain what reasonable efforts, if any, he undertook between October 14, 2010, and December 8, 2014 (the date the first demand letter was sent) to discover the alleged concealment. For example, Plaintiff does not allege whether he even inquired with Defendants about the status of the second tranche of escrow releases, whether they had been conveyed, transferred, or sold, etc. As a result, based on the allegations of the Complaint and the evidence presented in Plaintiff's opposition, the Court concludes the statute of limitations on Plaintiff's fraudulent misrepresentation claim ran out on October 14, 2013. *See Samuels v. Mix*, 22 Cal. 4th 1, 16 (1999) ("Section 338(d)'s discovery provision, like the common law discovery rule, affords fraud plaintiffs a rule of indefinitely delayed accrual . . . when plaintiffs can prove *diligence*.") (emphasis added).

Therefore, Plaintiff's First Claim for Relief is time-barred, and Defendants' motion for summary judgment on this claim is **GRANTED**.

2. <u>Second and Third Claims for Relief</u>

Plaintiff's Second and Third Claims for Relief are for intentional misrepresentation and negligent misrepresentation, respectively. Both claims are predicated on the allegation that, prior to agreeing to the First Amendment, Defendants allegedly misrepresented to Plaintiff that "Defendants would sell, convey and/or transfer the [second tranche of] escrow releases to a third-party, and pay Plaintiffs [sic] commission due and owing under the Commission Agreement, within 60-90 days of July 15, 2010." (Compl. ¶¶ 73, 80.)

Like fraudulent concealment, "the statute of limitations for intentional misrepresentation is three years." *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *12 (N.D. Cal. Nov. 11, 2016) (citing Cal. Civ. Proc. Code § 338(d)). However, in California a negligent misrepresentation claim "has either a two- or three-year statute of limitations." *Id.* (quoting *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1133 n.5 (N.D. Cal. June 30, 2009) (internal quotation marks omitted). The parties agree that the three-year statute of limitations applies to Plaintiff's negligent misrepresentation claim. (*See* Mot. at pp. 20-22, Opp'n at pp. 21-25.)

Defendants' motion argues that Plaintiff's misrepresentation claims began accruing on October 14, 2010, *i.e.*, 91 days after July 15, 2010, and therefore the statute of limitations for these claims ran out on October 14, 2013. Plaintiff's opposition does not directly address Defendants' argument,[5] and the Complaint does not allege any facts to establish a valid excuse. Even construing all factual inferences in Plaintiff's favor, the Court agrees with Defendants that the statute of limitations on these claims ran out on October 14, 2014. Thus, Plaintiff's Second and Third Claims for Relief are untimely, and Defendants' motion for summary judgment on these claims is **GRANTED**.

---

[5] To the extent Plaintiff intended to rely on his arguments against summary judgment of his fraudulent concealment claim based on the discovery rule for these claims, the Court finds its analysis equally applies.

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1754 Page 13 of 21

3. Seventh Claim for Relief

Plaintiff's Seventh Claim for Relief is for breach of both the Commission Agreement and the First Amendment. Plaintiff alleges that he fully performed under both contracts and "Defendants have breached the Commission Agreement and the [First] Amendment by failing to pay Plaintiffs [sic] commission due and owing" for the purchase of the second tranche of escrow releases. (Compl. ¶¶ 111-112.) A breach of contract claim based on a written instrument is subject to a four-year statute of limitations. *See* Cal. Code Civ. Proc. § 337.

Defendants argue they are entitled to summary judgment on this claim because there has been no breach. To support this argument, Defendants submitted evidence that "there has been no sale, conveyance, or transfer" by Kelly Escrow to a third-party end user or financial institution that would trigger Defendants' obligation to pay Plaintiff's commission. Alternatively, Defendants argue that Plaintiff's claim is time-barred because, by the Complaint's own allegations, the alleged breach occurred on July 15, 2010, and therefore the statute of limitations ran out on July 15, 2014.

In opposition, Plaintiff appears to have changed his theories of liability regarding his breach of contract claim. As Defendants observe, Plaintiff's theory, as pleaded in the Complaint, is that his second commission is "due and owing" under either contract. (Compl. ¶ 112.) Under this theory, unless the discovery rule applies, Plaintiff's failure to establish a valid excuse for the late filing of his breach of contract claim means the statute of limitations ran out on October 14, 2014 at the latest.

Nowhere in the Complaint does Plaintiff allege that Kelly Escrow sold, conveyed or transferred the second tranche of escrow releases (or otherwise allege Defendants' obligation to pay his second commission was triggered).[6] However, in opposition, Plaintiff asserts for the first time that Kelly Escrow did in fact transfer the second tranche

---

[6] *See* Note 4, *supra*.

of escrow releases, and therefore Defendants breached the First Amendment by failing to pay his commission at the time of the transfer. Although Plaintiff's theory was not properly alleged in his Complaint, in the interests of justice and to preserve judicial economy, the Court has reviewed its merits to determine whether a triable issue of material fact exists. Plaintiff's opposition submitted evidence to establish the following:

> - On July 14, 2010, Kelly Capital, Emmett David Hart ("Hart"), Susan Ekkebus ("Ekkebus"), and HCF, LLC ("HCF") created Kelly Escrow. According to the Kelly Escrow Operating Agreement, based on their respective capital contributions, Kelly Capital had a .00649% interest, Hart had a 49.99675% interest, and Ekkebus had a 49.99675% interest in Kelly Escrow. "Upon the sale of the escrow releases, Kelly Capital's interest in the profit from escrow releases was 50%, Hart's was 25% and Ekkebus' [sic] was 25%."
>
> - The Kelly Escrow Operating Agreement provided that a Member may transfer all or any part of the Member's interest to the company or another Member.
>
> - On November 23, 2010, Kelly Capital entered into a Joint Venture Agreement with Hart, Ekkebus, and HCF. Under the Joint Venture Agreement, "If all capital contributions made by Hart to [Kelly Escrow] are not repaid by December 31, 2011," then HCF will have the right to acquire Kelly [Capital's] interest in [Kelly Escrow]."
>
> - On December 19, 2011, HCF advised Kelly Capital in writing that it intended to exercise its right to acquire Kelly Capital's interest in Kelly Escrow if Hart's contributions were not repaid by December 31, 2011. This change would take effect on January 1, 2012.
>
> - On January 1, 2012, Kelly Escrow was converted from a California limited liability company to a Florida limited liability company.
>
> - On June 21, 2018, Michael Kelly testified that neither he nor Kelly Capital had any interest in their remaining 50% interest in the second tranche of escrow releases after it was transferred to

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1756 Page 15 of 21

> HCF, LLC on January 1, 2012. Michael Kelly further testified that Kelly Capital is not affiliated with Kelly Escrow in its capacity as a Florida Limited Liability company.

(Opp'n at pp. 6, 8-12.)

According to the terms of the First Amendment:

> *An affiliated entity of [Kelly Capital]* entered into that certain Escrow Release Transfer Agreement with S&M which sold certain rights to escrow releases for those Escrow Funds . . . ("Kelly Capital Escrow Funds"). [Kelly Capital] and MHP agree that [Kelly Capital] will pay the Commission due to MHP for the sale of any [Kelly Capital] Escrow Funds pursuant to the terms and conditions of the Escrow Agreement upon the sale, conveyance and/or *transfer* of the escrow releases for Kelly Capital Escrow Funds to *a third party end user* and/or financial institution ("3rd Party Buyer"). Such commission due to MHP shall only be calculated on the actual amount of Kelly Capital Escrow Funds assigned to a 3rd Party Buyer.

(Compl., Ex. B) (emphasis added.)

Construing all factual inferences in Plaintiff's favor for purposes of resolving Defendants' motion, the Court infers the following: 1) 50% of Kelly Capital's interest in the second tranche of escrow releases was transferred on July 14, 2010; and 2) Kelly Capital's remaining 50% interest in the escrow releases and its .00649% interest in Kelly Escrow were transferred on January 1, 2012. In addition, when the Commission Agreement and the First Amendment are read together, a reasonable finder of fact could interpret Plaintiff's and Kelly Capital's agreement as to payment of Plaintiff's second commission as follows:[7]

---

[7] The Court acknowledges that these are not the only reasonable inferences and/or interpretations of the parties' agreement and intent. However, they are reasonable inferences and/or interpretations most favorable to Plaintiff, which the Court applies for purposes of resolving Defendants' summary judgment motion.

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1757 Page 16 of 21

- Kelly Capital assigned its rights to purchase S&M's escrow releases to its "affiliated entity," *i.e.*, Kelly Escrow, which purchased S&M's escrow releases (the second tranche of escrow releases).

- Kelly Capital is obligated to pay Plaintiff (as MHP) a 5% commission for Kelly Escrow's purchase of the second tranche of escrow releases.

- Kelly Capital's payment of said commission to Plaintiff (as MHP) is due when *Kelly Capital*, through its assignee/affiliated entity (Kelly Escrow) sold, transferred, or conveyed its interest in the second tranche of escrow releases to a third-party or financial institution.

Under this interpretation, the triggering event for partial payment of Plaintiff's commission occurred on July 14, 2010, when Kelly Capital transferred its 50% interest in the second tranche of escrow releases to Hart and Ekkebus. The second triggering event for the remainder of Plaintiff's commission occurred on January 1, 2012, when Kelly Capital's interest in the other 50% of the second tranche of escrow releases and its .00649% interest in Kelly Escrow were transferred to HCF, LLC. However, to the extent that the First Amendment contemplates payment only upon sale, conveyance or transfer of *Kelly Capital's* interest (through Kelly Escrow) in the second tranche of escrow releases, the triggering event for the entirety of Plaintiff's commission occurred on January 1, 2012, when Kelly Capital ceased to be affiliated with Kelly Escrow.

This means that unless Plaintiff has affirmatively pleaded a valid excuse, the statute of limitations ran out on either July 14, 2014 for half of Plaintiff's commission, or on January 1, 2016, for the second half (or the entirety) of Plaintiff's commission. But as explained above, the Complaint does not allege these facts, let alone affirmatively plead Plaintiff's diligence in attempting to discover them. Nor does Plaintiff's opposition attempt to explain when and how Plaintiff made this discovery.[8] As a result, Plaintiff's

---

[8] As discussed above, Plaintiff vague and conclusory assertion that he discovered the relevant facts after the second demand letter was sent on February 10, 2015 is not enough to toll the statute of limitations.

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1758 Page 17 of 21

breach of contract claim is untimely under any of the theories he asserts in his Complaint and opposition.

Finally, Plaintiff's opposition also newly contends that three months after Defendants sued S&M, "Defendants' position was that based on the filing of the Virginia Case it [sic] could not sell, transfer or convey the escrow releases but had to 'wait until there's an answer form the Court on who's responsible for the taxes,' 'put the brakes on' and were 'dead in our tracks' [sic]." (Opp'n. at p. 17.) Although this argument is not clearly articulated, it appears to be that because Plaintiff "learned in 2014 that [the Virginia Case] had been resolved against Kelly Capital" and thereafter issued the demand letters discussed above, it is now treating Defendants' failure to respond as an anticipatory breach. Again, not only were these facts not alleged in the Complaint, but even if they were, Plaintiff's opposition does not establish when or how he learned of Defendants' position that they would not sell, convey, or transfer the second tranche of escrow releases. The "when" and "how" is necessary to justify tolling the statute of limitations.

For all of these reasons, Defendants' motion to dismiss Plaintiff's Seventh Claim for Relief is **GRANTED**.

4. Fourth and Fifth Claims for Relief

Plaintiff's Fourth and Fifth Claims for Relief are for breach of the implied duty to perform with reasonable care and breach of the covenant of good faith and fair dealing, respectively. (Compl. pp.16-17, 19-20.) The parties agree that each of these claims arise out of the Commission Agreement and/or First Amendment and are subject to a four-year statute of limitations under California law.

Defendants contend that both of these claims are predicated on their alleged failure to pay Plaintiff his commission for Kelly Escrow's purchase of the second tranche of escrow releases, and therefore the statute of limitations on these claims ran out on July 15, 2014. In opposition, Plaintiff does not directly respond to Defendants' arguments. Instead, Plaintiff collectively addresses these claims as his "breach of contract claims,"

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1753 Page 18 of 21

which the Court addressed immediately above. Thus, the Court's analysis regarding Plaintiff's breach of contract claim equally applies to these claims, but the Court shall also consider the claims individually.

The underlying facts of the Fourth Claim for Relief are:

> - "Defendants were required to pay Plaintiffs [sic] commission *upon the close of escrow for Defendants' purchase, transfer and conveyance of the Escrow Funds from S&M*."
>
> - "Defendants did not pay Plaintiffs [sic] commission due and owing upon the close of escrow, *based on the purchase, transfer and conveyance of Escrow Funds from S&M*."
>
> - "Defendants failed to use reasonable care when Defendants *assigned its [sic] rights to purchase escrow releases* to Kelly Escrow."

(Compl. ¶¶ 89-91) (emphasis added.) It is clear that this claim arises out of Defendants' obligation under the Commission Agreement to pay Plaintiff a commission upon the close of escrow of its purchase of the second tranche of escrow releases from S&M (*i.e.*, July 15, 2010), as opposed to Defendants' obligation under the First Amendment to pay Plaintiff's commission at the time Kelly Escrow sells, conveys, and/or transfers the escrow releases "to a third party end user and/or financial institution ('3rd Party Buyer')." (*Compare* Compl., Ex. A & Ex. B.)

Similarly, the Fifth Claim for Relief only vaguely alleges "Defendants unfairly interfered with the rights of Plaintiffs to receive the benefits of the agreements." (Compl. ¶ 97.) A review of the Complaint demonstrates the only "benefit" identified is the alleged outstanding commission for Defendants' purchase of the second tranche of escrow releases, which occurred on July 15, 2010.

As with the claims discussed above, based on the facts pleaded in the Complaint, Plaintiff should have been aware of Defendants' wrongdoing on October 14, 2010 based on Defendants' alleged representation on July 15, 2010 that the second commission would be paid 60-90 days after July 15, 2010. And because Plaintiff's opposition does

not establish a valid excuse to toll these claims any further, the four-year statute of limitations alternatively ran out on October 14, 2014 at the latest. Thus, Defendants' motion for summary judgment on Plaintiff's Fourth and Fifth Claims is **GRANTED**.

4. Sixth Claim for Relief

Plaintiff's Sixth Claim for Relief is for rescission of the First Amendment. Under California law, a claim "based upon the rescission of a contract in writing" is subject to a four-year statute of limitations. Cal. Code Civ. Proc. § 337. "The time begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred. Where the ground for rescission is fraud or mistake, the time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Id.*

Defendants argue that if Plaintiff prevails on this claim (thereby reinstating Defendants' obligation to pay the second commission under the Commission Agreement), he would nevertheless be unable to recover his second commission because his claim under the Commission Agreement accrued on July 15, 2010, and the statute of limitations ran out on July 15, 2014. Instead, of directly addressing this argument, Plaintiff's opposition appears to rely on the same collective "breach of contracts claims" arguments that the Court has addressed above. Accordingly, the Court finds its earlier analysis also applies to this claim, but nevertheless considers the claim individually.

Plaintiff alleges that, but for Defendants alleged misrepresentations and concealments, he would not have entered into the First Amendment or "agreed to Defendants' substitute performance." (Compl. ¶¶ 103-104.) Plaintiff does not specify the alleged misrepresentations and concealments, and therefore the Court concludes that Plaintiff intended to rely on the same alleged misrepresentations and concealments as the First, Second, and Third Claims for Relief. Consequently, this claim is also untimely for the same reasons stated above, and Defendants' motion for summary judgment on Plaintiff's Sixth Claim for Relief is **GRANTED**.

///

///

Case 3:17-cv-00346-BEN-AGS Document 78 Filed 09/10/18 PageID.1761 Page 20 of 21

6. Tenth Claim for Relief

Plaintiff's Tenth Claim for Relief is for quantum meruit. Contrary to Plaintiff's assertion otherwise, in California, the statute of limitations for a quantum meruit claim is two years. *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 6 Cal. App. 5th 1207, 1221 (Cal. Ct. App. 2016) (citing *Maglica v. Maglica*, 66 Cal. App. 4th 442, 452 (1998)); *see also* Cal. Code Civ. Prod. § 339.

According to Plaintiff's Complaint, Plaintiff "conferred a benefit upon Defendants by providing introductory services with S&M to purchase tobacco escrow funds," but did not receive value in return for providing the benefit. (Compl. ¶¶ 124-125.) On this basis, Plaintiff alleges he is "entitled to the fair value of the services provided." (*Id.* ¶ 127.) Based on these facts, Plaintiff's claim accrued on July 15, 2010, or on October 14, 2010 at the latest, when Defendants purchased the second tranche of escrow releases from S&M or failed to pay Plaintiff's commission 90 day thereafter. And because neither Plaintiff's Complaint nor its opposition establishes why the discovery rule should apply to this claim, the statute of limitations ran out on October 14, 2012 at the latest. Accordingly, Defendants' motion for summary judgment on Plaintiff's Tenth Claim for Relief is **GRANTED**.

7. Eighth and Ninth Claims for Relief

Plaintiff's Eighth and Ninth Claims are both for declaratory relief "under California's declaratory relief statute and/or the [federal] Declaratory Judgment Act." The Eighth Claim for relief seeks a "judicial determination that Kelly Escrow, its assignee, or the current owner of the escrow releases, and/or the owner of income generated by the escrowed funds, is a 'third-party end user and/or financial institution' as that term is used in the [First] Amendment." (*Id.* ¶ 116.) The Ninth Claim for Relief seeks "a determination on the construction of the Commission Agreement and [First] Amendment, and [Plaintiff's and Defendants'] respective rights, duties, and obligations thereunder." (*Id.* ¶ 121.)

///

Under California law, "[a] claim for declaratory relief is subject to the same statute of limitations as the legal or equitable claim on which it is based." *Bank of New York Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 943 (Cal. Ct. App. 2017) (citing *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1155 (1991)). Here, Plaintiff's declaratory relief claims are based on its breach of contract claims (*i.e.,* the Fourth, Fifth, Sixth, and Seventh Claims for Relief), all of which the Court has concluded are time-barred. As a result, Plaintiff's claims for declaratory relief under California law are also time-barred. The Declaratory Judgment Act provides litigants with an additional remedy; it does not create an independent claim for relief. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.").

Thus, the Court finds Defendants are also entitled to summary judgment on Plaintiff's Eighth and Ninth Claims for Relief, and their motion on these claims is **GRANTED**.

## CONCLUSION

To sum up, Plaintiff was granted five and a half months to conduct discovery prior to responding to Defendants' motion, and/or seek leave to amend his Complaint to establish a valid excuse as to why his claims are not barred by their respective statute of limitations. Plaintiff has failed to demonstrate why the discovery rule should apply to toll the statute of limitations on any of his claims. As a result, the Court concludes Plaintiff has not met his burden to demonstrate a triable issue of material fact exists for any of his claims. Therefore, Defendants' motion for summary judgment on each of Plaintiff's claims is **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 10, 2018

Hon. Roger T. Benitez
United States District Judge